IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION
IN ADMIRALTY

| | |
|---|---|
| LARRY OWENS, | CIVIL ACTION NO.   9:23-cv-1098-RMG |
| Plaintiff, | |
| vs. | |
| HILTON HEAD MARINE RAILWAY, LLC, and KEITH WALSTON | |
| Defendants. | |

## **COMPLAINT**

COMES NOW the Plaintiff, Larry Owens, by and through undersigned counsel, who respectfully avers before this Honorable Court, upon information and belief, as follows:

### **Subject Matter Jurisdiction and Applicable Law**

1.　This is an Admiralty and Maritime Claim within the meaning of 28 U.S.C. § 1333. Plaintiff hereby invokes Fed. R. Civ. P. 9(h).

2.　Venue is appropriate pursuant to 28 U.S.C. § 1913(b)(1) and (2).

3.　This action arises under and is governed by the General Maritime Law of the United States; other laws supplementary and amendatory thereto; and all precedent interpreting same.

### **Parties**

4.　The Plaintiff, Larry Owens, is a natural person over the age of majority and a citizen and resident of Georgetown County, South Carolina.  Owens is the owner of the F/V CAPT. ANDREW, which is a 69.8 feet, self-propelled, coastwise, U.S. Flag, commercial shrimp trawler bearing United States Coast Guard Official No. 18983 (hereinafter "the vessel").

1

5. Defendant Hilton Head Marine Railway, LLC (hereinafter "HHMR") is a South Carolina Limited Liability Company with its principal place of business on Hilton Head Island in Beaufort County, South Carolina.

6. Defendant Keith Walston is a natural person over the age of majority who is, upon information and belief, a resident and citizen of Beaufort County, South Carolina and the Owner and/or Managing Member of HHMR.

### Facts

7. While underway on or about March 13, 2020, the CAPT. ANDREW developed a propulsion issue involving her propellers. The crew concluded that the issue could not be addressed underwater, and therefore made transit to HHMR, which was the closest facility with the ability to haul the vessel. Plaintiff intended to have his own contractors make the repairs at the HHMR facility.

8. On March 17, 2020, the Plaintiff delivered the vessel to HHMR to be hauled, at which point she was in the care, custody, and control of HHMR. Other than the propeller issue, the vessel was in staunch and seaworthy condition, with no structural problems.

9. HHMR agreed to haul the vessel, creating a maritime contract.

10. On March 19, 2020, HHMR attempted to haul the vessel, in an effort undertaken and supervised by Defendant Walston but, due to the negligence of Walston and/or other HHMR personnel, somehow rolled the vessel on her starboard side, causing considerable visible damage to the hull and structural issues that were unknown at the time.

11. Despite this predicament, the Plaintiff was able to complete the previously required repair in less than two business days, returning the propeller to the vessel on March 30, 2020, while the vessel was still located at HHMR.

12. During the time the vessel was located at HHMR, HHMR made some effort to make surface repairs to the damage it caused when the vessel rolled onto her starboard side, apparently believing it had completed these repairs by April 6, 2020, when HHMR attempted to re-float the vessel.

13. At that point, HHMR and Walston rolled the vessel off of the railway again, causing significant visible damage and also causing or exacerbating internal structural damage from the prior incident during haulout.

14. The vessel remained at HHMR until May 6, 2020, during which time significant repairs were undertaken by the Plaintiff, contractors hired by the Plaintiff, and certain vendors and employees hired by the Defendant.

15. Believing that the vessel had been adequately repaired, the vessel was refloated and returned to service. Once the vessel began its usual work of shrimp trawling, it became apparent that there remained damage that had not been repaired. It was determined that the shaft and rudder tube had suffered damage during the incidents at HHMR, which ultimately failed and were repaired at a different facility. This repair made the vessel suitable for its usual service for the remainder of the 2020 shrimping season. During this period it was also determined that the vessel required a a significant refastening effort, which was accomplished over the period of time when the vessel could be taken out of service with minimal financial impact to the Plaintiff.

16. As a direct result of the incidents at HHMR, the vessel was out of service entirely from March 19, 2020 until September, 2020, missing the bulk of the 2020 shrimping season, along with other periods until such time as the vessel was returned to the pre-incident condition.

17. Plaintiff is entitled to loss of use of a commercial vessel for all periods in which the vessel was unable to shrimp in the usual course due to damage from the incidents in March and April 2020.

18. Plaintiff is also entitled to all costs of repair that it performed or directed, acknowledging that Defendants performed some repairs at their own cost or as reimbursed by their insurer.

### Plaintiff's First Cause of Action Against HHMR
### (Bailment / Breach of Contract)

19. Plaintiff restates and realleges every allegation contained in the above paragraphs.

20. Plaintiff and Defendant HHMR entered into a maritime contract to haul the vessel.

21. Plaintiff delivered the vessel to HHMR in good condition, creating a maritime bailment.

22. HHMR breached this duty by failing to return the vessel to the Plaintiff in same condition, thereby breaching the bailment.

23. As a direct and proximate cause of this breach, the vessel was significantly damaged, which required extensive repairs, kept the vessel out of service for an extended period of time, entitling the Plaintiff to damages for the cost of inspecting and repairing the damage, for all loss of use of the commercial vessel, and all other actual and consequential damages which may be proven at trial.

### Plaintiff's Second Cause of Action Against HHMR and Walston
**(Maritime Negligence)**

24. Plaintiff restates and realleges every allegation contained in the above paragraphs.

25. Plaintiff and Defendant HHMR entered into a maritime contract to haul the vessel.

26. As a result of the negligence of HHMR and Defendant Walston described above, the vessel fell from the railway and rolled onto her side, on two separate occasions, causing significant damage to the vessel.

27. HHMR and Walston failed to exercise due care in hauling the vessel, thereby breaching their duties owed to Plaintiff under maritime law, therefore being liable for the general maritime law tort of negligence.

28. As a direct and proximate cause of the defendants' negligence, the vessel was significantly damaged, which required extensive repairs, and the vessel was out of service for an extended period of time, entitling the Plaintiff to damages for the cost of inspecting and repairing the damage, for all loss of use of the commercial vessel, and all other actual and consequential damages which may be proven at trial.

### Plaintiff's Third Cause of Action against HHMR
**(Breach of Implied Warranty)**

29. Plaintiff restates and realleges every allegation contained in the above paragraphs.

30. Plaintiff and Defendant HHMR entered into a maritime contract to haul the vessel which included the warranty of workmanlike service, implied in every maritime contract

31. As a result of its breach of this warranty, the vessel was significantly damaged, which required extensive repairs, and the vessel was out of service for an extended period of time, entitling the Plaintiff to damages for the cost of inspecting and repairing the damage, for all loss

of use of the commercial vessel, and all other actual and consequential damages which may be proven at trial. In addition, HHMR is liable to the Plaintiff for the costs of the haulout, launching, and lay days, along with attorneys' fees and other costs incurred in assessing and making this claim.

## **Plaintiff's Prayer**

**WHEREFORE**, based on the foregoing, Plaintiff prays that the Defendants be cited to appear to answer all matters aforesaid; and that Judgment be entered for Plaintiff against Defendant, for all general and special damages described above and otherwise known to the general maritime law, plus pre-judgment interest, punitive damages, and attorney's fees, all taxable costs of the action, and for all such further relief as this Honorable Court may deem just and right following the trial of this case.

                                        RESPECTFULLY SUBMITTED:
                                        MARVEL ET AL., LLC

                                        By: s/ David B. Marvel
                                        David B. Marvel (Fed. ID. No. 7957)
                                        PO Box 22734
                                        Charleston, SC 29413
                                        Tel: 843-853-4877
                                        Fax: 843-773-4877
                                        dave@marvel.lawyer

March 19, 2023
Charleston, South Carolina